**UNITED STATES  DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**ZACHARY SPENCER**                                    **CIVIL ACTION**

**versus**                                             **NO. 10-721**

**N. BURL CAIN, WARDEN**                               **SECTION: "N" (1)**

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  See 28 U.S.C. § 2254(e)(2).  Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Zachary Spencer, is a state prisoner incarcerated at the Louisiana State Penitentiary, Angola, Louisiana.  On May 21, 1998, he was convicted of possession of cocaine in

violation of Louisiana law.[1]  On August 9, 1999, he was found to be a fourth offender and was sentenced as such to a term of life imprisonment without benefit of probation, parole, or suspension of sentence.[2]  On February 21, 2001, the Louisiana Fourth Circuit Court of Appeal affirmed that conviction and sentence.[3]  The Louisiana Supreme Court then denied petitioner's related writ application on June 27, 2003.[4]

On or about December 22, 2003, petitioner filed with the state district court an application for post-conviction relief.[5]  That application was denied on February 6, 2009.[6] Petitioner's related writ applications were then likewise denied by the Louisiana Fourth Circuit Court of Appeal on April 7, 2009,[7] and by the Louisiana Supreme Court on January 29, 2010.[8]

---

[1]  State Rec., Vol. III of V, transcript of May 21, 1998, p. 60; State Rec., Vol. I of V, minute entry dated May 21, 1998; State Rec., Vol. II of V, jury verdict form.

[2]  State Rec., Vol. III of V, transcript of August 9, 1999; State Rec., Vol. I of V, minute entry dated August 9, 1999.

[3]  State v. Spencer, No. 99-KA-2127 (La. App. 4th Cir. Feb. 21, 2001) (unpublished); State Rec., Vol. II of V.

[4]  State v. Spencer, 852 So.2d 988 (La. 2003) (No. 2001-KO-0944); State Rec., Vol. II of V.

[5]  State Rec., Vol. II of V.

[6]  State Rec., Vol. II of V, Judgment dated February 6, 2009.

[7]  State v. Spencer, No. 2009-K-0255 (La. App. 4th Cir. Apr. 7, 2009) (unpublished); State Rec., Vol. V of V.

[8]  State ex rel. Spencer v. State, 25 So.3d 826 (La. 2010) (No. 2009-KH-0798); State Rec., Vol. V of V.

On February 18, 2010, petitioner filed the instant federal application for *habeas corpus* relief.[9]  In support of his application, he asserts the following claims:

1.      There was insufficient evidence to support petitioner's conviction;

2.      The trial court erred in adjudicating petitioner a fourth offender;

3.      Petitioner's sentence is unlawful; and

4.      Petitioner received ineffective assistance of counsel.

The state concedes that the federal application is timely and that petitioner exhausted his remedies in state court.[10]

## I.  Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of law, questions of fact, and mixed questions of law and fact.  The amendments "modified a federal habeas

---

[9] Rec. Doc. 3.

[10]  Rec. Doc. 9, pp. 4-8.  The Court notes that, in discussing exhaustion, the state contends that petitioner's claim that his sentence is excessive is procedurally barred.  The state's contention is based on the fact that the excessive sentence claim was asserted on both direct and collateral review, and, therefore, was rejected by the state court rejected on collateral review as repetitive pursuant to La.C.Cr.P. art. 930.4(A).  The state is incorrect on this point.  A claim dismissed as repetitive pursuant to La.C.Cr.P. art. 930.4(A) is not procedurally barred in a federal *habeas corpus* proceeding; rather, this Court simply "look[s]-through" the ruling on collateral review and considers only the original ruling on direct review. <u>Bennett v. Whitley</u>, 41 F.3d 1581, 1582-83 (5th Cir. 1994).

–  3  –

court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." <u>Bell v. Cone</u>, 535 U.S. 685, 693 (2002). Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1) and pure questions of fact are reviewed under § 2254(d)(2). <u>Hill v. Johnson</u>, 210 F.3d 481, 485 (5th Cir. 2000).

As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." <u>Bell</u>, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases. A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

<u>Wooten v. Thaler</u>, 598 F.3d 215, 218 (5th Cir. 2010) (internal quotation marks, ellipses, brackets, and footnotes omitted).

Regarding the "unreasonable application" clause, the United States Supreme Court has explained:

> [A] state-court decision can involve an "unreasonable application" of this Court's clearly established precedent in two ways. First, a state-court decision involves an unreasonable application of this Court's precedent if the state court identifies the correct governing legal rule from this Courts cases but unreasonably applies it to the facts of the particular state prisoner's case. Second, a state-court decision also involves an unreasonable application of this Court's precedent if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

Williams v. Taylor, 529 U.S. 362, 407 (2000). The Supreme Court has noted that the focus of this inquiry "is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams that an unreasonable application is different from an incorrect one." Bell, 535 U.S. at 694.

As to questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

## II. Facts

On direct appeal, the Louisiana Fourth Circuit Court of Appeal summarized the facts of this case as follows:

Officer Octave LaRoche testified that on June 13, 1997, he saw a vehicle with a paper temporary license plate traveling on Dwyer Road. Because he thought that the license plate was outdated, he decided to stop the vehicle. After stopping the vehicle, Officer LaRoche found that the license plate did not belong on that particular vehicle and he noticed that the driver of the vehicle smelled of alcohol. Upon further investigation, the officer saw a partially smoked marijuana cigarette in the vehicle's ashtray and two alcoholic beverages in the vehicle. Officer LaRoche testified that, as a safety measure, he then searched defendant who was a passenger in the vehicle. During this search, Officer LaRoche felt an object in the defendant's rear pocket. When the officer asked defendant what that object was, defendant stated that it was a crack pipe that was left in the vehicle by an unidentified female. Defendant said that he had put the pipe in his pocket after dropping off the female at an unknown location on Chef Menteur Highway. When he recovered the pipe from defendant's pocket, Officer LaRoche noted that the pipe contained a white powdery residue.

Criminalist William Giblin testified that he tested the contents of the crack pipe and found that the pipe contained cocaine residue.[11]

### III. Petitioner's Claims

### A. Sufficiency of the Evidence

Petitioner's first claim is that there was insufficient evidence to support his conviction. On direct appeal, the Louisiana Fourth Circuit Court of Appeal denied that claim, holding:

> [D]efendant complains that the State failed to present sufficient evidence to support the verdict of guilty of possession of crack cocaine. Specifically, he argues that the State failed to show that he knew that the glass pipe contained cocaine or that he possessed the pipe with the intent to possess cocaine.
>
> The standard for reviewing a claim of insufficient evidence is whether, viewing the evidence in the light most favorable to the

---

[11] State v. Spencer, No. 99-KA-2127, pp. 1-2 (La. App. 4th Cir. Feb. 21, 2001) (unpublished); State Rec., Vol. II of V.

prosecution, a rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt. <u>Jackson v. Virginia</u>, 443 U.S. 307, 319[,] 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); <u>State v. Hawkins</u>, 96-0766, p. 7 (La. 1/14/97), 688 So.2d 473, 479. The reviewing court must consider the record as a whole and not just the evidence most favorable to the prosecution; and, if rational triers of fact could disagree as to the interpretation of the evidence, the rational decision to convict should be upheld. <u>State v. Mussall</u>, 523 So.2d 1305, 1309 (La. 1988). Additionally, the court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence. <u>Id</u>. The trier of fact's determination of credibility is not to be disturbed on appeal absent an abuse of discretion. <u>State v. Cashen</u>, 544 So.2d 1268, 1275 (La. App. 4 Cir. 1989).

Defendant was found guilty of possession of cocaine. To support a conviction for possession of cocaine, the State must prove that the defendant was in possession of the illegal drug and that he knowingly possessed it. La. Rev. Stat. Ann. § 40:967(C). The defendant admitted to possessing the crack pipe, but he denies any knowledge of possessing the cocaine residue that was found in the pipe.

The elements of knowledge and intent are states of mind and need not be proven as facts, but may be inferred from the circumstances. <u>State v. Guillard</u>, 98-0504, p. 4 (La. App. 4 Cir. 4/7/99), 736 So.2d 273, 276. The factfinder may draw reasonable inferences from the evidence presented at trial to determine if the defendant acted knowingly or intentionally. <u>Id</u>. When circumstantial evidence forms the basis for the conviction, such evidence must exclude every reasonable hypothesis of innocence. La. Rev. Stat. Ann. § 15:438.

When reviewing a trial court's interpretation of circumstantial evidence, the appellate court does not determine whether another possible hypothesis suggested by the defendant could afford an exculpatory explanation of events. Rather, when evaluating the evidence in the light most favorable to the prosecution, the court determines whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt under <u>Jackson v. Virginia</u>. <u>State v. Davis</u>, 92-1623, p. 11 (La. 5/23/94), 637 So.2d 1012, 1020. This is not a separate test from <u>Jackson v. Virginia</u>; it is an evidentiary guideline to assist the jury when considering circumstantial evidence and to facilitate appellate review of whether a rational juror could have found the defendant guilty beyond a reasonable doubt. <u>State v.</u>

Addison, 94-2431, p. 6 (La. App. 4 Cir. 11/30/95), 665 So.2d 1224, 1228; State v. Wright, 445 So.2d 1198, 1201 (La. 1984).

In State v. Smith, 98-2645, p. 5 (La. App. 4 Cir. 1/26/00), 752 So.2d 314, 317, this Court stated:

> Guilty knowledge is an essential element of the crime of possession of cocaine. State v. Goiner, 410 So.2d 1085, 1086-87 (La. 1982). Although a conviction for possession of cocaine can stand on the possession of the slightest amount of the drug, the amount of the substance will have some bearing on the defendant's guilty knowledge. State v. Gaines, 96-1850, pp. 5-6 (La. App. 4 Cir. 1/29/97), 688 So.2d 679, 682-83, writ denied 97-0510 (La. 9/5/97), 700 So.2d 503; State v. Spates, 588 So.2d 398, 401 (La. App. 2 Cir. 1991). In addition, the possession of drug paraphernalia is, because of the items' peculiar nature, indicative of guilty knowledge. Gaines, p. 6, 668 So.2d at 683; Spates, 588 So.2d at 402.

One of the circumstances most often cited as evidence of guilty knowledge in crack pipe cases is the presence of visible residue in the pipe. For example, in State v. Tassin, 99-1692, p. 6 (La. App. 4 Cir. 3/15/00), 758 So.2d 351, 355, this Court held that the testimony of two police officers that visible cocaine residue in a crack pipe found in the defendant's purse was sufficient to show guilty knowledge. In State v. Lewis, 98-2575 (La. App. 4 Cir. 3/1/00), 755 So.2d 1025 an arresting officer noticed what he believed, based on his experience, to be cocaine residue in a crack pipe. This Court noted that "the presence of visible cocaine residue in the crack pipe found in the defendant's front coat pocket is sufficient evidence to support the inference that the defendant had the requisite intent to attempt to possess cocaine." Id. 98-2575 at p. 4, 755 So.2d at 1028. In State v. Drummer, 99-0858, p. 6 (La. App. 4 Cir. 12/22/99), 750 So.2d 360, 365, the defendant's possession of two crack pipes containing visible cocaine residue was sufficient to establish guilty knowledge.

In State v. Guillard, 98-0504 (La. App. 4 Cir. 4/7/99), 736 So.2d 273 this Court affirmed the defendant's conviction for attempted possession of cocaine when a police officer testified that he retrieved a crack pipe from the defendant's pants pocket and that the pipe appeared to contain cocaine residue. The Court rejected the

defendant's argument that the State failed to prove that he knew there was cocaine in the pipe or that he attempted to possess cocaine. The Court stated that the defendant's possession of a crack pipe with visible cocaine residue in it allowed an inference that the defendant had the intent to attempt to possess cocaine. Id., 98-0504 at p. 6, 736 So.2d at 277.

In the case at bar, Officer LaRoche testified that defendant admitted putting the pipe into his pocket and that the pipe contained visible residue. Defendant did not contradict this testimony; he merely argues that he did not know that the pipe contained cocaine residue. Possession of drug paraphernalia is indicative of guilty knowledge. Therefore, even if defendant did not knowingly possess the cocaine residue, a rational juror could have found him guilty of cocaine possession beyond a reasonable doubt because defendant knowingly possessed the crack pipe. The State presented sufficient evidence of defendant's guilty knowledge and excluded every reasonable hypothesis of innocence. This assignment of error is without merit.[12]

The Louisiana Supreme Court then denied petitioner's related writ application without assigning additional reasons.[13]

Because a sufficiency of the evidence claim presents a mixed question of law and fact, this Court must defer to the state court's decision rejecting such a claim unless petitioner shows that the decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); Taylor v. Day, Civ. Action No. 98-3190, 1999 WL 195515, at *3 (E.D. La. Apr. 6, 1999), aff'd, 213 F.3d 639 (5th Cir. 2000). For the following reasons, the Court finds that petitioner has made no such showing in the instant case.

---

[12] State v. Spencer, No. 99-KA-2127, pp. 2-6; State Rec., Vol. II of V.

[13] State v. Spencer, 852 So.2d 988 (La. 2003) (No. 2001-KO-0944); State Rec., Vol. II of V.

As noted by the state court, claims of insufficient evidence are to be analyzed pursuant to the standard set forth in Jackson v. Virginia, 443 U.S. 307 (1979), which held that "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319. Accordingly, "[t]he Jackson inquiry 'does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit.'" Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir. 2001) (quoting Herrera v. Collins, 506 U.S. 390, 402 (1993)) (emphasis added).

In evaluating the sufficiency of the evidence, the Jackson standard "must be applied with explicit reference to the substantive elements of the criminal offense *as defined by state law*." Jackson, 443 U.S. at 324 n.16 (emphasis added). However, Louisiana's circumstantial evidence standard requiring that the every reasonable hypothesis of innocence be excluded does *not* apply in a federal *habeas corpus* proceedings; in these proceedings, *only* the Jackson standard need be satisfied, even if state law would impose a more demanding standard of proof. Foy v. Donnelly, 959 F.2d 1307, 1314 n.9 (5th Cir. 1992); Higgins v. Cain, Civ. Action No. 09-2632, 2010 WL 890998, at *21 n.38 (E.D. La. Mar. 8, 2010); Williams v. Cain, No. 07-4148, 2009 WL 224695, at *4 (E.D. La. Jan. 29, 2009); Davis v. Cain, Civ. Action No. 07-6389, 2008 WL 5191912, at *14 (E.D. La. Dec. 11, 2008); Wade v. Cain, Civil Action No. 05-0876, 2008 WL 2679519, at *6 (W.D. La. May 15, 2008) (Hornsby, M.J.) (adopted by Stagg, J., on July 3, 2008), aff'd, No. 08-30721, 2010 WL 1427372 (5th Cir. Apr. 9, 2010).

As an initial matter, this Court notes that the instant case involves the possession of only the cocaine residue found in crack pipe. However, possession of such residue is all that is required for a conviction under La.Rev.Stat. § 40:967(C). The Louisiana Supreme Court has held that "[t]here is no question that a conviction for possession of cocaine may rest upon possession of *any amount* of the drug." State v. Sylvia, 845 So.2d 358, 361 (La. 2003) (emphasis added).

That said, "[g]uilty knowledge is an essential element of the crime of possession of cocaine," id., and petitioner contends that there was insufficient evidence to prove that he *knowingly* possessed the drug in the instant case because there was no evidence at trial that the cocaine residue was visible to the naked eye. That contention is untrue. Officer Octave LaRoche clearly testified at trial that he "saw a white powdery substance in the pipe."[14] Under Louisiana law, "cocaine residue, visible to the naked eye, would be evidence sufficient to support a conviction for possession of cocaine." Id. Moreover, petitioner admits that he was in possession of the crack pipe, and the Louisiana Supreme Court has explained that, as a matter of state law, proof of a defendant's knowing possession of an obviously used crack pipe is sufficient to support a conviction for possession of cocaine:

> Unlawful possession of cocaine is a general intent crime. La. R.S. 40:966(C); La. R.S. 14:11; State v. Banks, 307 So.2d 594 (La. 1975). General criminal intent is present "when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act." La. R.S. 14:10(2) (emphasis added). It was entirely reasonable for a jury to conclude that by the defendant's possessing an obviously used pipe he must have realized, in the ordinary course of human experience, that it was

---

[14] State Rec., Vol. III of V, transcript of May 21, 1998, p. 12.

also reasonably certain that he was possessing the residue contained
in that pipe and, therefore, possessing the cocaine.

Sylvia, 845 So.2d at 364.

In summary, the testimony and physical evidence presented in the instant case, viewed in the light most favorable to the prosecution, were clearly sufficient for any rational trier of fact to find petitioner guilty beyond a reasonable doubt of violating La.Rev.Stat. § 40:967(C) as that crime is defined by state law. Therefore, he cannot show that the state court's decision rejecting his claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Accordingly, this Court must defer to the state court's decision rejecting that claim.

## B. Habitual Offender Adjudication

Petitioner's second claim is that the trial court erred in adjudicating him a fourth offender. On direct appeal, the Louisiana Fourth Circuit Court of Appeal rejected that claim, holding:

> [D]efendant complains that the trial court erred in adjudicating him
> a fourth felony offender. Defendant challenges the use of three prior
> guilty pleas to enhance his sentence. To support this challenge,
> defendant alleges there is no proof that the sentencing courts
> informed him of the nature of the prior charges against him, or of the
> minimum and maximum sentences to which he was exposed.
> Defendant, however, does not challenge the validity of the prior
> guilty pleas.
>     The district attorney filed a multiple bill based upon three
> prior convictions: (1) Case No. 302-765, an August 1984 guilty plea
> to purse snatching; (2) Case No. 348-978, a July 1991 guilty plea to
> possession of cocaine; and, (3) Case No. 362-101, a June 1993 guilty
> plea to possession of cocaine.[FN] Defendant objected to the
> multiple bill, and the trial judge issued a written judgment overruling
> defendant's objections. Citing State v. Shelton, 621 So.2d 769 (La.

1993), the court rejected defendant's argument that the guilty plea colloquies were defective and found defendant to be a fourth felony offender.

> [FN] At the multiple bill hearing, the State introduced the following items into evidence: a card containing defendant's fingerprints taken the day of the hearing; the bills of information, arrest registers, guilty plea forms, and plea colloquies for the three prior convictions. None of these documents are in the record; but, because defendant is not asserting that these prior pleas are invalid under Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), their absence from the record is immaterial.

The Habitual Offender Law provides that when filing a multiple bill, the district attorney has the burden of proving beyond a reasonable doubt any issue of fact, and the presumption of regularity of judgment shall be sufficient to meet the original burden of proof. La. Rev. Stat. Ann. § 15:529.1(D)(1)(b). If the defendant denies the allegations of the bill, the State must prove the existence of the prior guilty pleas and that defendant was represented by counsel when the pleas were entered. State v. Shelton, 621 So.2d at 779.

> If the State meets this burden, the defendant has the burden to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. If the defendant is able to do this, then the burden of proving the constitutionality of the plea shifts to the State. The State will meet its burden of proof if it introduces a "perfect" transcript of the taking of the guilty plea, one which reflects a colloquy between the judge and defendant wherein the defendant was informed of and specifically waived his right to trial by jury, his privilege against self-incrimination, and his right to confront his accusers. If the State introduces anything less than the "perfect" transcript, for example, a guilty plea form, a minute entry, an "imperfect" transcript, or any combination thereof, the judge must then

weigh the evidence submitted by the defendant and by the State to determine whether the State has met its burden of proving that the defendant's prior guilty plea was informed and voluntary, and made with an articulated waiver of the three <u>Boykin</u> rights. (footnotes omitted).

State v. Shelton, 621 So.2d at 779-80.

Article 556.1 of the Louisiana Code of Criminal Procedure provides that the trial court shall not accept a guilty plea without first addressing the defendant and informing him of, among other things, the nature of the charges against him and the minimum and maximum penalties provided by law. Defendant asserts here, as he did in the trial court, that his prior guilty pleas should not have been used to enhance his sentence because there was a procedural irregularity in the taking of the plea. Specifically, defendant argues that the sentencing judges did not inform him of the nature of the three prior charges to which he pleaded guilty, nor did they inform defendant of the minimum and maximum sentences for each charge.

Article 556.1 was enacted in 1997, after defendant entered the three guilty pleas that formed the basis for the multiple bill; thus, the trial courts in those prior guilty pleas were not required to inform defendant of his sentencing exposure or of the nature of the charges at the time he entered his guilty plea. In State v. Ballay, 99-906 (La. App. 5 Cir. 2/29/00), 757 So.2d 115, the defendant argued that he should not have been found a multiple offender because he had not been properly advised of the maximum sentences when he entered his guilty pleas on two predicate offenses. The Fifth Circuit rejected this claim because Article 556.1 was not in effect at the time of either prior conviction. Id. at 131; see also State v. Perkins, 99-1109, p. 9 (La. App. 5 Cir. 4/25/00), 762 So.2d 67, 73. Similarly, article 556.1 does not apply to this case, and the defendant has failed to present any additional evidence of a procedural irregularity in the taking of his plea.

Therefore, this assignment is without merit.[15]

---

[15] State v. Spencer, No. 99-KA-2127, pp. 6-8; State Rec., Vol. II of V.

The Louisiana Supreme Court then denied petitioner's related writ application without assigning additional reasons.[16]

As noted, petitioner's claim is that his habitual offender adjudication was erroneous because it was based on predicate convictions which were themselves invalid due to procedural irregularities. That claim is clearly foreclosed in this federal proceeding by Lackawanna County District Attorney v. Cross, 532 U.S. 394 (2001). In Lackawanna, the United States Supreme Court stated:

> [W]e hold that once a state conviction is no longer open to direct or collateral attack in its own right because the defendant failed to pursue those remedies while they were available (or because the defendant did so unsuccessfully), the conviction may be regarded as conclusively valid. *If that conviction is later used to enhance a criminal sentence, the defendant generally may not challenge the enhanced sentence through a petition under § 2254 on the ground that the prior conviction was unconstitutionally obtained.*

Id. at 403-04 (citation omitted; emphasis added). Because petitioner's predicate convictions are no longer open to direct or collateral attack, Lackawanna prohibits him from challenging his current enhanced sentence in this proceeding on the ground that the predicate convictions were illegal.[17]

---

[16] State v. Spencer, 852 So.2d 988 (La. 2003) (No. 2001-KO-0944); State Rec., Vol. II of V.

[17] The Supreme Court noted that the Lackawanna prohibition would not apply when it is argued that the predicate conviction was unconstitutional because it was obtained where there was a failure to appoint counsel as required by Gideon v. Wainwright, 372 U.S. 335 (1963). Lackawanna, 532 U.S. at 404. Here, petitioner does not allege that he was unrepresented in the prior proceedings.

The Supreme Court further noted that the Lackawanna prohibition may not apply if the federal *habeas corpus* petition is, effectively, the first and only forum available for review of the challenge to the prior convictions. Id. at 405; see also Flot v. Cain, Civ. Action No. 05-6439, 2007 WL 2491388, at *9 n.33 (E.D. La. Aug. 30, 2007). That potential exception is also inapplicable here, in that the validity of each of the predicate convictions was subject to challenge in the state courts.

See Silvo v. Cain, Civ. Action No. 09-3692, 2009 WL 3151166, at *2 (E.D. La. Sept. 30, 2009);

Johnson v. Hubert, Civ. Action No. 08-688, 2008 WL 1746727, at *3 (E.D. La. Apr. 11, 2008).[18]

### C. Unlawful Sentence

Petitioner next claims that his sentence is unlawful. On direct appeal, the Louisiana

Fourth Circuit Court of Appeal rejected that claim, holding:

> [D]efendant complains that the trial court erred in not complying with the requirements of art. 894.1 of the Louisiana Code of Criminal Procedure[FN] when it imposed the mandatory life sentence on him as a fourth felony offender. He argues that a downward departure from the mandatory life sentence was justified because of several mitigating factors, and he states that the trial judge gave only brief articulation of the reasons for the life sentence.
>
> > [FN] The sentencing court may consider aggravating and mitigating factors when sentencing a defendant. La. Code Crim. Proc. Ann. art. 894.1.
>
> Because the entire Habitual Offender Law has been found constitutional, the minimum sentences it imposes upon multiple felony offenders are presumed to be constitutional. State v. Johnson, 97-1906, pp. 6-7 (La. 3/4/98), 709 So.2d 672, 675. In spite of this presumption, a Habitual Offender minimum sentence, which is provided by the statute, may still be unconstitutionally excessive if it makes no measurable contribution to acceptable goals of punishment, or is nothing more than the needless and purposeless

[18] As noted, the state courts also determined that Louisiana's Habitual Offender Law would allow the use of the predicate convictions because, at the time of the prior proceedings, state law did not require the trial courts to inform petitioner of his sentencing exposure or of the nature of the charges. If petitioner is also claiming that this was an incorrect interpretation of state law, that claim is likewise not cognizable. "'[I]t is not the province of a federal *habeas* court to reexamine state-court determinations on state-law questions.'" Trevino v. Johnson, 168 F.3d 173, 184 (5th Cir. 1999) (quoting Estelle v. McGuire, 502 U.S. 62, 67-68 (1991)); Dickerson v. Guste, 932 F.2d 1142, 1145 (5th Cir. 1991) ("We will not review a state court's interpretation of its own law in a federal habeas corpus proceeding. We do not sit as a 'super' state supreme court in such a proceeding to review errors under state law.") (internal citation and quotation marks omitted).

imposition of pain and suffering, and is grossly out of proportion to the severity of the crime.  State v. Johnson, 97-1906 at 6-7, 709 So.2d at 676; State v. Dorthey, 623 So.2d 1276, 1280-81 (La. 1993).  A defendant must present substantial evidence to rebut that presumption of constitutionality.  State v. Francis, 96-2389, p. 7 (La. App. 4 Cir. 4/15/98), 715 So.2d 457, 461 writ denied 98-2360 (La. 2/5/99), 737 So.2d 741.

In State v. Johnson, the Supreme Court discussed what it characterized as the "rare" circumstances where a sentence lower than the minimum sentence mandated by the Habitual Offender Law is required because imposition of the mandatory sentence would be excessive under the Louisiana Constitution.  See also State v. Lindsey, 99-3256, p. 5 (La. 10/17/00), 770 So.2d 339, 343.  "A court may only depart from the minimum sentence if it finds that there is clear and convincing evidence in the particular case before it which would rebut [the] presumption of constitutionality .... [D]epartures downward from the minimum sentence under the Habitual Offender Law should occur only in rare situations."  State v. Johnson, 97-1906 at p. 7, 709 So.2d 676, 677.  The defendant bears the burden of clearly and convincingly rebutting the presumption of constitutionality by showing that he is an "exceptional" case.  Id. (citing State v. Young, 94-1636, p. 5 (La. App. 4 Cir. 01/26/95), 663 So.2d 525, 531).  To be an "exceptional" case, the defendant must show that the legislature failed to assign sentences that are meaningfully tailored to the defendant's culpability, the gravity of the offense, and the circumstances of the case.  Id.

"[W]hile a defendant's record of non-violent offenses may play a role in a sentencing judge's determination that a minimum sentence is too long, it cannot be the only reason, or even the major reason, for declaring such a sentence excessive."  Id.  This is because the defendant's history of violent or non-violent offenses has already been taken into account under the Habitual Offender Law for third and fourth offenders, which punishes third and fourth offenses with a history of violent offenses more severely than those with a history of non-violent offenses.  Id.

The sentencing court must consider whether the defendant has proven that the minimum sentence is so excessive that it violates Louisiana's Constitution.  Id.  If the court finds that the defendant presented clear and convincing evidence that the minimum sentence was excessive, the court must sentence the defendant to the longest sentence that is not constitutionally excessive.  Id.

Although defendant was found guilty of possession of cocaine, he possessed a nearly undetectable amount of residue that was found in the crack pipe. At the sentencing hearing, defense counsel argued that defendant's possession of such a small amount of cocaine should be considered a mitigating factor. He also argued that the defendant's first conviction for purse snatching in 1984, was his only crime of violence as defined by section 14:2 of the Louisiana Revised Statutes; he read from an excerpt of the sentencing transcript from that conviction in which the trial judge noted that the victim had not been injured and that her property had been immediately returned to her. With regard to defendant's two other prior convictions, defense counsel stated that they were both for possession of cocaine. He argued that none of defendant's prior felonies involved the use of a weapon and that no force or intimidation had been used.

In sentencing defendant to life imprisonment, the trial judge stated that he considered the mitigating circumstances and that even though the victim had not been injured in the 1984 purse snatching, it was still a crime of violence. The judge further noted that the Legislature has had ample opportunity to amend section 14:2 to delete purse snatching as a crime of violence or to indicate that if there were no injuries, then it would not be a crime of violence. The judge concluded that under section 15:529.1, he must impose a sentence of life imprisonment at hard labor. The trial judge denied defendant's motion for reconsideration of sentence.

Defendant did not present clear and convincing evidence to rebut the presumption that his mandatory life sentence is constitutional. On the contrary, defendant has been convicted of two prior cocaine possessions and one violent crime. Under article 894.1, defendant's multiple offenses are aggravating factors that the sentencing court should consider. The trial judge would not have been justified in a downward departure from the mandatory sentence under the Habitual Offender Law. This assignment is without merit.[19]

The Louisiana Supreme Court then denied petitioner's related writ application without assigning additional reasons.[20]

---

[19] State v. Spencer, No. 99-KA-2127, pp. 8-11; State Rec., Vol. II of V.

[20] State v. Spencer, 852 So.2d 988 (La. 2003) (No. 2001-KO-0944); State Rec., Vol. II of V.

To the extent petitioner is arguing that the trial court failed to comply with the requirements of La.C.Cr.P. art. 894.1 or that his sentence was excessive under Louisiana law, such claims are not cognizable in this federal proceeding. As previously noted, federal *habeas corpus* relief is available only for violations of *federal* constitutional law and, therefore, this Court does not sit to review alleged errors of state law. Narvaiz v. Johnson, 134 F.3d 688, 695 (5th Cir. 1998); see also Butler v. Cain, 327 Fed. App'x 455, 457 (5th Cir. 2009) (expressly holding that a petitioner's argument that the trial court failed to comply with La.C.Cr.P. art. 894.1 is an issue of state law not cognizable in a federal *habeas corpus* proceeding); Haynes v. Butler, 825 F.2d 921, 924 (5th Cir. 1987) (same); Smith v. Travis, Civ. Action No. 08-4627, 2009 WL 1704335, at *13 (E.D. La. June 16, 2009) ("If petitioner is now arguing that his sentence is excessive under Louisiana law, that claim is not cognizable in this federal proceeding."). Accordingly, this Court will not review the state court's findings regarding the legality of petitioner's sentence under state law.

To the extent that petitioner is arguing that his sentence is excessive under the Eighth Amendment of the United States Constitution, that argument has no merit. In Solem v. Helm, 463 U.S. 277, 284 (1983), the Supreme Court held that the Eighth Amendment "prohibits not only barbaric punishments, but also sentences that are disproportionate to the crime committed." "This constitutional principle is tempered, however, by the corollary proposition that the determination of prison sentences is a legislative prerogative that is primarily within the province of legislatures, not courts." United States v. Gonzales, 121 F.3d 928, 942 (5th Cir. 1997) (citing Rummel v. Estelle, 445 U.S. 263, 274-76 (1980)). "[C]ourts must grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes."

Gonzales, 121 F.3d at 942 (quotation marks omitted). "[T]herefore, it is firmly established that successful challenges to the proportionality of punishments should be exceedingly rare." Id. (quotation marks omitted).

Interpreting Solem in light of intervening precedent, the United States Fifth Circuit Court of Appeals has set forth the framework to be used when analyzing a claim that a sentence is excessive:

> [W]e will initially make a threshold comparison of the gravity of [petitioner's] offenses against the severity of his sentence. Only if we infer that the sentence is grossly disproportionate to the offense will we then ... compare the sentence received to (1) sentences for similar crimes in the same jurisdiction and (2) sentences for the same crime in other jurisdictions.

McGruder v. Puckett, 954 F.2d 313, 316 (5th Cir. 1992). Moreover, when evaluating the excessiveness of a sentence imposed under a habitual offender statute, a court must be mindful that the "sentence is imposed to reflect the seriousness of [petitioner's] most recent offense, not as it stands alone, but in the light of his prior offenses." Id.

The United States Fifth Circuit Court of Appeals has noted that Rummel v. Estelle, 445 U.S. 263 (1980), "establishes a benchmark for disproportionate punishment under the Eighth Amendment." Gonzales, 121 F.3d at 943. In Rummel, the United States Supreme Court had upheld a petitioner's sentence to life imprisonment for obtaining $120.75 under false pretenses. The sentence was imposed under a Texas recidivist statute and took into account petitioner's prior convictions for fraudulent use of a credit card and passing a forged check. The Fifth Circuit observed:

> We acknowledge that the distinction between constitutional sentences and grossly disproportionate punishments is an inherently subjective judgment, defying bright lines and neutral principles of law. Nevertheless, we can say with certainty that the life sentence approved in <u>Rummel</u> falls on the constitutional side of the line, thereby providing a litmus test for claims of disproportionate punishment in violation of the Eighth Amendment.

<u>Gonzales</u>, 121 F.3d at 943 (footnote omitted).

Applying this "litmus test" and considering the <u>Rummel</u> finding that a life sentence was not excessive when imposed for a nonviolent property offense where the habitual offender had two prior nonviolent property offenses, this Court must conclude that petitioner's sentence as a fourth offender to a term of life imprisonment was not grossly disproportionate in light of petitioner's serious criminal record, i.e. his current conviction for possession of cocaine, his two prior drug convictions, and his prior conviction for purse snatching.[21]  Because it is clear that the

---

[21] Moreover, the Court notes that it is unmoved by petitioner's attempt to diminish the seriousness of his offenses.

Although petitioner's multiple drug convictions were for mere possession of cocaine, such offenses are still inherently grave.  As Justice Kennedy noted in his concurring opinion in <u>Harmelin v. Michigan</u>, 501 U.S. 957 (1991):

> Possession, use, and distribution of illegal drugs represent one of the greatest problems affecting the health and welfare of our population. Petitioner's suggestion that his crime was nonviolent and victimless, echoed by the dissent, is false to the point of absurdity.  To the contrary, petitioner's crime threatened to cause grave harm to society.
>
> Quite apart from the pernicious effects on the individual who consumes illegal drugs, such drugs relate to crime in at least three ways:  (1) A drug user may commit crime because of drug-induced changes in physiological functions, cognitive ability, and mood; (2) A drug user may commit crime in order to obtain money to buy drugs; and (3) A violent crime may occur as part of the drug business or culture.

<u>Id</u>. at 1002 (citations and quotation marks omitted).

Likewise, the fact that petitioner did not physically injure his victim in the purse snatching

sentence imposed in the instant case is not grossly disproportionate, this Court's "inquiry is finished." Gonzales, 121 F.3d at 942. Petitioner's sentence is not so excessive as to violate the United States Constitution, and his claim therefore fails.

### D. Ineffective Assistance of Counsel

Petitioner's last claim is that he received ineffective assistance of counsel. The state district court rejected that claim, holding:

> The right of a defendant in a criminal proceeding to the effective assistance of counsel is mandated by the Sixth Amendment to the U.S. Constitution. State v. Wry, 591 So.2d 774 (La. App. 2d Cir. 1991). In alleging ineffective assistance of counsel, a defendant must satisfy a two-pronged test by showing first, that his attorney's performance was so deficient as to deny him the "counsel" guaranteed by the Sixth Amendment and second, that those errors were so serious as to deprive the accused of a fair trial, i.e., one with a reliable result. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Grissom, 624 So.2d 476 (La. App. 2d Cir. 1993).
>
> In the Application for Post Conviction Relief filed by the defendant, he has failed to provide any evidence to support the allegations raised therein. Further, there is no evidence presented in the defendant's pleading that would satisfy the two pronged test outlined by the Court as his claims are without merit.[22]

─────────────────────

is hardly persuasive. Purse snatching is an inherently dangerous offense. It involves a physical act that places the victim at risk for physical injury. Moreover, it can easily trigger an exaggerated response by the victim or bystanders which poses a serious risk of harm to innocent persons.

[22] State Rec., Vol. II of V, Judgment dated February 6, 2009.

Petitioner's claim was then likewise denied by the Louisiana Fourth Circuit Court of Appeal[23] and the Louisiana Supreme Court.[24]

 Because a claim of ineffective assistance of counsel is a mixed question of law and fact, this Court must defer to the state court decision rejecting petitioner's claim unless that decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002). For the following reasons, the Court finds that neither of those conditions is met in the instant case.

 As correctly noted by the state court, the United States Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel. A petitioner seeking relief must demonstrate that counsel's performance was deficient *and* that the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 697 (1984). A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000). If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong. Strickland, 466 U.S. at 697.

---

 [23] State v. Spencer, No. 2009-K-0255 (La. App. 4th Cir. Apr. 7, 2009) (unpublished); State Rec., Vol. V of V.

 [24] State *ex rel.* Spencer v. State, 25 So.3d 826 (La. 2010) (No. 2009-KH-0798); State Rec., Vol. V of V.

To prevail on the deficiency prong of the Strickland test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. See Strickland, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690). A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to prove prejudice with respect to trial counsel, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." Crockett, 796 F.2d at 793.

In the instant case, defense counsel argued at sentencing that, pursuant to State v. Burns, 723 So.2d 1013 (La. App. 4th Cir. 1998), the judge should exercise his discretion and

impose a sentence below the statutory minimum. Petitioner contends that counsel was ineffective for failing to also cite three additional cases: State v. Sepulvado, 367 So.2d 762 (La. 1979); State v. Lombato, 603 So.2d 739 (La. 1992); and State v. Dorthey, 623 So.2d 1276 (La. 1993). Petitioner's argument is unpersuasive for the following reasons.

Burns, the case cited by defense counsel at sentencing, clearly supports the points he was making. In Burns, the court found that a life sentence was excessive for a fourth offender convicted of distribution of cocaine, holding:

> A sentence may be reviewed for constitutional excessiveness even though it is within statutory guidelines. State v. Cann, 471 So.2d 701, 703 (La. 1985). In reviewing a sentence for excessiveness, the appellate court must first determine whether the trial court complied with La.C.Cr.P. art. 894.1 when it imposed the sentence and then determine whether the sentence is too severe given the circumstances of the case and the defendant's background. State v. Lobato, 603 So.2d 739, 751 (La. 1992). If the sentence needlessly imposes pain and suffering and is grossly out of proportion to the gravity of the offense so as to shock our sense of justice, then it may be determined to be unconstitutionally excessive as violative of La. Const. art. 1, Sec. 20 (1974). Id.

Burns, 723 So.2d at 1018. The Burns court went on to hold:

> [U]nder La. R.S. 15:529.1(A)(1)(c)(ii), defendant was subject to a mandatory life sentence as a fourth offender convicted of distribution of cocaine. The penalties provided by La. R.S. 15:529.1 are not unconstitutional on their face. State v. Pollard, 93-0660 (La. 10/20/94), 644 So.2d 370. The trial court has the authority to reduce the mandatory minimum sentence provided by the statute for a particular offense and offender when such a term would violate the defendant's constitutional protection against excessive punishment. Id.

Burns, 723 So.2d at 1018-19.

The Burns court further expressly noted that "[w]henever a defendant is faced with a mandatory life sentence as a multiple offender, heightened scrutiny is triggered when determining if defendant falls within those 'rare' circumstances where a downward departure is warranted." Id. at 1019. The court also indicated that, in making that determination, a sentencing court should consider the circumstances of the instant and predicate offenses (such as whether the amount of drugs involved is negligible and whether the defendant is a drug addict rather than "a hardened and violent criminal"), the defendant's age (including whether he is young enough to be rehabilitated and "to overcome his addiction to cocaine, the root of his criminal problems"), the defendant's family background and support, and whether petitioner's crimes involved violence. Id. at 1019-20.

The additional citations suggested by petitioner, i.e. Sepulvado, Lombato, and Dorthey, contain little that is not in Burns, and, in fact, the latter two cases are even cited in Burns. Therefore, the additional citations would have been merely cumulative and repetitive, and so counsel was not deficient for failing to also expressly cite them at sentencing. Moreover, in any event, petitioner was not prejudiced, in that there is no indication that the trial judge would have imposed a more lenient sentence if only the cases had been cited.[25]

In summary, it is evident that the state court identified the proper standard, i.e. the Strickland standard, and applied it in a reasonable manner. Therefore, petitioner has failed to demonstrate that the state court's decision was contrary to, or involved an unreasonable application

_____

[25] Additionally, the Court notes that any downward departure would have been subject to reversal, because the Court of Appeal expressly noted on direct appeal that, in the instant case, "[t]he trial judge *would not have been justified* in a downward departure from the mandatory sentence under the Habitual Offender Law." State v. Spencer, No. 99-KA-2127, p. 11 (emphasis added); State Rec., Vol. II of V.

of, clearly established Federal law, as determined by the Supreme Court of the United States. Accordingly, applying the AEDPA's deferential standard, this Court should likewise reject petitioner's ineffective assistance of counsel claim.

### RECOMMENDATION

Accordingly, **IT IS RECOMMENDED** that petitioner's application for federal *habeas corpus* relief be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[26]

New Orleans, Louisiana, this thirteenth day of August, 2010.



**SALLY SHUSHAN**
**UNITED STATES MAGISTRATE JUDGE**

---

[26] <u>Douglass</u> referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.